UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN A. FREE,<br><br>Petitioner,<br><br>v.<br><br>M. KRAMER,<br><br>Respondent. | ) | 1:06-CV-1779 OWW JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections. He is serving a sentence of eighteen years to life following his conviction for second degree murder. Petitioner does not challenge the validity of his conviction, but instead challenges disciplinary action taken against him in 2004. (Answer at 1-2.)

On April 23, 2004, an incident occurred which resulted in Petitioner being charged with committing battery with a deadly weapon. On May 26, 2004, a hearing was conducted to adjudicate the charge against Petitioner. He was found guilty. (Answer at 2-3.)

Petitioner filed a petition for writ of habeas corpus in the Tuolumne County Superior Court. The court denied the petition in a reasoned opinion. (Answer at 3; Ex. 4.)

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. The court summarily denied the petition. (Answer at 3; Ex. 5.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The court summarily denied the petition. (Answer at 3; Ex. 6.)

On November 29, 2006, Petitioner filed the instant petition in this Court. The petition raises the following two grounds for relief: 1) insufficient evidence to support the finding that Petitioner committed battery with a deadly weapon; and 2) Petitioner was denied due process when the Deputy Warden falsely claimed that Petitioner had been interviewed regarding his appeal of the outcome of the disciplinary hearing.

On January 31, 2008, Respondent filed an answer to the petition.

On March 3, 2008, Petitioner filed a traverse to the answer.

## FACTUAL BACKGROUND[1]

On Friday, April 23, 2004, at approximately 1440 hours, while conducting the building recall, Control Booth Officer Ross observed Inmate Van Winkle assaulting Petitioner on the second tier between cells 246 and 247. Petitioner was face down as Van Winkle kneeled over him striking him in the head and upper torso area. Officer Ross could not tell if Petitioner was attempting to protect himself or he was unconscious. Officer Ross activated the Personal Alarm Device. Ross retrieved the L8/37mm launcher and loaded six 264R multiple rubber baton rounds. Officers Manzer and Worley were still on the other side of the building in "A" section. Officer Ross opened the gun port and yelled, "Knock it off! Get down!" Van Winkle did not comply. Attempting to ricochet the rubber baton projectiles, Ross aimed, then fired one round. Having no effect, Ross again yelled, "Knock it off! Get down!" Ross then fired a second round at the wall. Still having no effect on Van Winkle, Ross shouted his orders once more, then fired a third round at the wall, with no effect. Ross yelled to Officers Manzer and Worley, "Go spray them." Manzer and Worley responded up the stairs ordering Van Winkle and Petitioner several times, "Stop fighting and get down." As they reached the top of the stairs, Manzer and Worley could see Van Winkle striking Petitioner in the

---

[1] The facts are derived from the narrative contained in the crime incident report of April 23, 2004. (Answer, Ex. 2 at 2.)

head and facial area. Using their MK9's, both Manzer and Worley sprayed Van Winkle and Petitioner in the head and facial area. Van Winkle and Petitioner stopped fighting and took the prone position. Responding staff placed Van Winkle and Petitioner into handcuffs and escorted them to the plaza area. Both inmates' injuries were photographed by Officer Irvin. While photographing the crime scene Officer Irvin discovered a black base of a hairbrush protruding from the corner of the cell door of Petitioner's cell, number 246. The hairbrush was eight inches in length and the handle had been sharpened into a point, a stabbing weapon. The hairbrush appeared to have blood on it. Irvin took control of the hairbrush.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, at the time of the incident, Petitioner was confined at California State Prison, Solano, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

### II. Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state

court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

## III. Review of Petitioner's Claims

### A. Grounds One and Two

Petitioner argues that there was insufficient evidence to support the finding that he committed battery with a deadly weapon. Petitioner further argues that he was denied due process when the Deputy Warden, on two separate occasions, falsely claimed that Petitioner had been interviewed regarding his appeal of the outcome of the disciplinary hearing.

These claims were presented in a petition for writ of habeas corpus to the Tuolumne County Superior Court, which denied the petition in a reasoned opinion. (Answer, Ex. 4.) The issues were then presented in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Answer, Exs. 5-6.) The California Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Superior Court found that there was some evidence supporting the finding that Petitioner committed the battery, as there was evidence that Petitioner was fighting with another inmate and an inmate-made weapon was found in Petitioner's cell near where the fight took place. The court further found that, in response to Petitioner's claim that he was

never interviewed regarding his appeal, correctional staff attempted to interview Petitioner, but he refused to participate. (Answer, Ex. 4.)

When an inmate is facing disciplinary action, due process requires that the inmate receive written notice of the charges at least twenty-four hours before the hearing and a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974). An inmate facing disciplinary proceedings also has a limited right to call witnesses and present documentary evidence in his defense and, where the inmate is illiterate or the complexity of the issues involved makes it unlikely that he will be able to collect and present the necessary evidence, a right to obtain aid in the presentation of his case. Id. at 566-70. In addition, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (citations and quotation marks omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Here, the evidence showed that Inmate Van Winkle and Petitioner were involved in an altercation in which Van Winkle was kneeling on top of Petitioner and hitting him in the head and upper body with his fists. (Answer, Ex. 2 at 5, 8, 10-11, 13.) Petitioner was lying face down near cells 246 and 247. (Id. at 5, 10.) A hairbrush that was made into a stabbing weapon was found under the door of cell 246, which was solely occupied by Petitioner. The weapon appeared to be covered in blood and was found near where Petitioner was lying during the altercation. (Id. at 2, 6.) Petitioner suffered several wounds to his face and head, while Van Winkle suffered numerous wounds including puncture wounds to the back of his left arm. (Id. at 2, 6; Answer, Ex. 3 at 3; Medical Reports attached to Petition.) Petitioner did not provide testimony explaining the facts surrounding the incident. (Answer, Ex. 3 at 2, 4.)

While there was no direct evidence that Petitioner attacked Van Winkle with the sharpened hairbrush, there was direct evidence showing that Petitioner was in an altercation with Van Winkle.

Further, the hairbrush, which had blood on it, was found under the door of Petitioner's cell near the site of the altercation and Van Winkle suffered injuries consistent with being attacked by a sharp instrument. The evidence in the record was therefore sufficient to find that Petitioner committed battery with a deadly weapon against Inmate Van Winkle. See Superintendent v. Hill, 472 U.S. 445, 457 (1985) ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. . . . Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.").

Petitioner has also not established that his due process rights were violated by the failure of correctional staff to interview him regarding his appeal, as he acknowledges that he declined to comment when the CDC attempted to interview him. (Petition, Memorandum at 5.) Further, Petitioner has not shown what relevant information he would have presented during an interview and explained how it would have affected the outcome of his appeal.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: November 12, 2008** **/s/ John M. Dixon**

UNITED STATES MAGISTRATE JUDGE